IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROLAND N. PATTERSON, JR.,　　　　　　　*

　　　　Plaintiff,　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　　　*　　　Civil No. 24-2812-BAH

LINDA H. LAMONE ET AL.,　　　　　　　*

　　　　Defendants.　　　　　　　　　　*

*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

## MEMORANDUM OPINION

Plaintiff Roland N. Patterson, Jr. ("Patterson") sues twenty-one individuals, including current and former members of the Attorney Grievance Commission of Maryland, former Maryland Bar Counsel Lydia Lawless ("Lawless") and Glenn Grossman ("Grossman"), and former Deputy Bar Counsel Raymond Hein ("Hein") (Lawless, Grossman, and Hein together referred to as "Bar Counsel") (collectively "Defendants") alleging forty-seven[1] claims arising out of the denial of two of Patterson's petitions to be reinstated to the Maryland bar. ECF 27 (amended complaint).[2] Pending before the Court is Defendants' motion to dismiss. ECF 43 (the "Motion"); ECF 47 (amended memorandum of law). Patterson filed an opposition, ECF 51 (amended opposition), and Defendants filed a reply, ECF 56. All filings include memoranda of law, and the Motion includes an exhibit.[3] See ECF 22. The Court has reviewed all relevant filings and finds

---

[1] Though the counts in the amended complaint appear to only go to forty-five, counts twenty-one and twenty-two are listed twice. See ECF 27, at 62–64.

[2] The original complaint is docketed at ECF 1.

[3] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

that no hearing is necessary.[4]  *See* Loc. R. 105.6 (D. Md. 2025).  Accordingly, for the reasons stated below, Defendants' Motion is **GRANTED**.

## I.   BACKGROUND

### A.   Statutory Background

This action arises from two of Patterson's petitions to be reinstated to the Maryland bar after an indefinite disciplinary suspension. *See* ECF 27, at 9 ¶ 7. Maryland Rule 19-702 establishes the Attorney Grievance Commission of Maryland (the "Commission"), which "consist[s] of 12 members appointed by the Supreme Court [of Maryland]." Md. Rule 19-702(a).  The Commission is tasked with, *inter alia*, appointing and supervising Bar Counsel, as well as exercising its authority to discipline attorneys who violate the Maryland Rules of Professional Conduct. *See id.* (h).  Bar Counsel is appointed by the Commission and has the duty to, as relevant here, "investigate professional misconduct," "issue subpoenas," "prosecute all disciplinary and remedial proceedings," "investigate petitions for reinstatement . . . and represent the Commission in those proceedings." Md. Rule 19-703(b)(1)–(3), (7).

Where, as here, an attorney seeks to be reinstated after a suspension exceeding six months, the suspended attorney must "file a verified petition for reinstatement with the Clerk of the Supreme Court . . . The attorney shall be the petitioner.  Bar Counsel shall be the respondent." Md. Rule 19-752(c). In addition to providing "facts establishing the attorney's subsequent conduct and reformation," the petitioning attorney must also provide certain information to Bar Counsel including details of his or her previous employment, any pending civil or criminal actions, details of the attorney's income during the period of discipline, and income tax returns. *Id.* (d)(2). Bar Counsel then must respond to the petition. *Id.* (e)(1).  "[U]pon review of the petition and Bar

---

[4] Accordingly, Patterson's request for a hearing on the Motion, ECF 58, is DENIED.

2

Counsel's response, the [Supreme] Court may . . . without a hearing, dismiss the petition[.]" *Id.* (f)(2).

## B.    Factual Background

Patterson became "licensed to practice law in Maryland in May [of] 1987." ECF 27, at 9 ¶ 7. In 2011, his license was suspended indefinitely with the right to request readmission after six months.[5] *Id.* at 10 ¶ 10; *see also Att'y Grievance Comm. of Md. v. Patterson*, 28 A.3d 1196 (Md. 2011).[6] In May of 2012, Patterson applied for reinstatement of his license. ECF 27, at 11 ¶ 11. Grossman and Hein objected to Patterson's reinstatement petition for a number of reasons, including that Patterson allegedly submitted a fraudulently written character reference with his petition, *id.* at 13 ¶ 24, failed to timely withdraw representation of clients after his suspension, *id.* at 18 ¶ 46, failed to file a notice of his employment at a law firm as required by the Maryland Rules, *id.* at 19 ¶ 52, and failed to disclose traffic citations, *id.* at 19–20 ¶ 55. The Supreme Court of Maryland heard argument on Patterson's 2012 petition but did not hold a testimonial hearing, *id.* at 21 ¶ 59, and his petition was subsequently denied based on Bar Counsel's objections. *Id.* at 15 ¶ 33.

In 2021, Patterson filed another reinstatement petition, *id.* at 24 ¶ 71, to which Lawless objected due to several income and tax-related issues, *see e.g.*, *id.* at 28 ¶ 89, at 29 ¶ 93, at 30–31 ¶ 101, at 33–34 ¶ 109. Lawless also requested certain of Patterson's medical records, *id.* at 24 ¶ 74, which Patterson attempted to exclude from disclosure by filing a writ of mandamus with the

---

[5] Patterson indicates he is not challenging the 2011 suspension. ECF 27, at 10 ¶ 10.

[6] *See Torkornoo v. Helwig*, Civ. No. TDC-15-2652, 2017 WL 4898260, at *1 n.1 (D. Md. Oct. 27, 2017) (taking judicial notice of rulings in a state court case (citing *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that a court may take judicial notice of matters of public record))), *aff'd*, 723 F. App'x 198 (4th Cir. 2018).

Supreme Court of the United States, which was denied, *id.* at 26–27 ¶¶ 84–85. Patterson alleges

that Lawless unjustifiably cited his opposition to the disclosure of his medical records as a basis

for objecting to his 2021 reinstatement petition. *Id.* at 28 ¶ 90. Patterson's petition for

reinstatement was again denied by the Supreme Court of Maryland, allegedly without any hearing.

*Id.* at 98 ¶ 352, at 99–100 ¶ 362(C).

In the order denying the 2021 petition,[7] the Supreme Court of Maryland cited Bar

Counsel's objections as justification for dismissal of Patterson's 2021 reinstatement petition,

including that Patterson "fail[ed] to provide information and copies of filed tax returns for the

years subsequent to his suspension, . . . fail[ed] to provide adequate information concerning his

employers during the period of discipline, . . . fail[ed] to provide information concerning the source

and amount of his monthly income," engaged in "unauthorized practice of law during the period

of suspension," and "submi[tted] a fraudulent character letter in connection with his initial Petition

for Reinstatement." ECF 43-2, at 2–3.

Patterson brings forty-seven claims against Commission members and Bar Counsel

including 42 U.S.C. § 1983 claims alleging the violation of Patterson's due process and equal

protection rights, a 42 U.S.C. § 1981 claim, and additional claims under Maryland state law. ECF

27, at 49–98 ¶¶ 179–357.[8] Patterson seeks compensatory and punitive damages, attorney's fees,

---

[7] The order is attached to the Motion as an exhibit. *See* ECF 43-2. "In reviewing a motion to dismiss, courts may consider documents referenced or relied upon in the complaint." *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 772 n.1 (D. Md. 2015) (citing *Abelman v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 660, 662 n.1 (D. Md. 2013)). Because the order is referenced in Patterson's complaint, and no party disputes its authenticity, the Court considers it. *See, e.g.*, ECF 27, at 78 ¶ 263 ("The Maryland Supreme Court referred generally to this objection by Defendants at Premise Two of its Order, issued October 26th, 2021.").

[8] The Court observes that the nature of several of Patterson's claims is unclear, as the amended complaint lists counts merely labeled as "MALICE," *e.g.*, ECF 27, at 61 ¶ 213, while others

and declaratory and injunctive relief. *See id.* at 99–100. Defendants filed a motion to dismiss Patterson's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF 43, ·which is now ripe for resolution.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. *See Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F.Supp. 676, 679 (D. Md. 1996)). In deciding whether a complaint alleges facts sufficient to support subject matter jurisdiction, the Court assumes the truthfulness of the facts alleged. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

collectively list various statutes, cases, and Constitutional Articles together as the basis for an individual claim, *e.g.*, *id.* at 77 ¶ 260.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.    ANALYSIS

Defendants assert Eleventh Amendment, prosecutorial, and state personnel immunity. *See* ECF 47, at 11–21. Defendants also argue that Patterson's claims are time-barred and that he has failed to state a claim under Rule 12(b)(6). *Id.* at 21–24. As explained below, Patterson's claims will be dismissed because Defendants enjoy Eleventh Amendment and prosecutorial immunity.

### A.    Eleventh Amendment Immunity

Defendants first argue that Patterson's claims are barred by the Eleventh Amendment. ECF 47, at 11–15. An "Eleventh Amendment immunity analysis turns on whether the Defendants are sued in their individual or official capacities." *Mitchell v. Stump*, Civ. No. PX-17-2056, 2018 WL 4468855, at *3 (D. Md. Sept. 18, 2018). Patterson asserts claims against Defendants in both their official and individual capacities. *See* ECF 27, at 1–6. The Court first analyzes the viability of Patterson's official capacity claims and then turns to his individual capacity claims.

#### 1.    Official Capacity Claims

Under the Eleventh Amendment to the United States Constitution, a state and its agencies and departments are immune from suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state officials acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *See*

6

*Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in its courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity to suit in federal court. "A State's constitutional interest in immunity encompasses not merely whether it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphasis in original).

"[T]he Attorney Grievance Commission is an arm of the state of Maryland." *Kramer v. Grossman*, Civ. No. ELH-13-1745, 2014 WL 937146, at *6 (D. Md. Mar. 10, 2014) (citing *Muhammad v. Maryland Court of Appeals*, Civ. No. CCB-06-3444, 2008 WL 398246, at * 1 (D. Md. Feb. 8, 2008)). Defendants contend, and Patterson does not dispute,[9] that members of the Commission and Bar Counsel are state officials for purposes of Eleventh Amendment immunity. *Compare* ECF 47, at 13 ("Defendants are agents of the state."), *with* ECF 51-1, at 11 ("[I]t is necessary for the named defendants to be sued here in both their official and personal capacities."). Patterson's official capacity claims are thus barred under the Eleventh Amendment unless they fall under the *Ex parte Young* exception.

"[T]he *Ex parte Young* exception to Eleventh Amendment immunity remains generally available to a plaintiff who seeks prospective declaratory and injunctive relief against a state official for an ongoing violation of federal law."[10] *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 204 (4th Cir. 2001) (citations omitted); *see also Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). However, "[j]ust because a private citizen's federal suit seeks declaratory injunctive relief against

---

[9] "In failing to respond to this argument[,] Plaintiff concedes the point." *Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016).

[10] The *Ex parte Young* exception rests on the notion "that a State officer who acts in violation of the Constitution is 'stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.'" *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002) (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)).

State officials does not mean that it must automatically be allowed to proceed under an exception

to the Eleventh Amendment protection." *Bell Atl. Md., Inc. v. MCI Worldcom, Inc.*, 240 F.3d 279,

294 (4th Cir. 2001). To determine if this exception applies, courts consider "whether [the]

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020) (quoting

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). This is a

"straightforward inquiry" and "does not include an analysis of the merits of the claim." *Verizon

Md., Inc.*, 535 U.S. at 646.

Here, Patterson asserts that his federal official capacity claims survive because of the *Ex

parte Young* exception, *see* ECF 51-1, at 11, but the requested declaratory and injunctive relief in

the amended complaint fail to trigger that exception. First, Patterson's requests for declarations

that Md. Rule 19-752(f)(2)(A) and "the structure of Maryland [a]ttorney [d]iscipline" are both

"unconstitutional as violative of Due Process and Equal Protection," fail because he does not seek

relief based on any allegedly unconstitutional acts of individual state officials. *See* ECF 27, at 99.

"The *Ex Parte Young* exception only permits actions against state officials, not the State itself or

its instrumentalities." *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F.

Supp. 3d 364, 373 (D. Md. 2020). Here, Patterson seeks relief against the Commission, if not the

State itself, and thus fails to implicate the *Ex parte Young* exception. *Cf. id.* (finding the *Ex parte

Young* exception inapplicable where the plaintiff sought a declaration of the unconstitutionality of

acts by the state Medical Cannabis Commission and not individual state officials).

Plaintiff's request for declarations that the "denial of his 2012 and 2021 reinstatement

petitions were unconstitutional" and reinstatement of his "right to practice law before The United

8

States District Court for [t]he District of Maryland"[11] likewise fail to trigger the exception because Patterson seeks to retrospectively redress past state actions. *See* ECF 27, at 99–100. This type of "backwards-looking" relief is not implicated by *Ex parte Young* and remains barred by the Eleventh Amendment. *See Howell v. Hogan*, Civ. No. SAG-22-0408, 2022 WL 17812641, at *3 (D. Md. Dec. 19, 2022) (noting that the *Ex parte Young* exception is inapplicable when a Plaintiff "seeks a declaration relating to past state actions"). Patterson also fails to tailor his other requests for injunctive relief to any allegedly ongoing constitutional violations. *See* ECF 27, at 100 (demanding that Bar Counsel refrain from "represent[ing] themselves in future proceedings on the [r]einstatement of [Patterson]" and that Defendants negotiate with the Governor and the legislature on "how Maryland [a]ttorney licensure and regulation may be best moved from the judicial to the executive branch"); *see also MediGrow, LLC*, 487 F. Supp. 3d at 374 (finding request for injunctive relief that was "not tailored to any purported constitutional violation" failed to trigger the *Ex parte Young* exception). Accordingly, the *Ex parte Young* exception does not apply to Patterson's requests for relief, and his official capacity claims are barred by the Eleventh Amendment.

---

[11] Admission to the bar of this Court is predicated on an attorney's good standing as a member of a state bar. *See* Loc. R. 701.1(a) (D. Md. 2025). When an attorney is indefinitely suspended from a state bar, this Court imposes "identical discipline." *See id.* 705.3(d). An attorney that has been indefinitely suspended "may only apply for reinstatement" to the bar of this Court "upon proof that the attorney has been reinstated by the court in which the attorney was disciplined." *Id.* 705.4(b). In other words, Patterson cannot apply for reinstatement to the bar of this Court unless and until he is reinstated to the Maryland bar. To the extent Patterson asks this Court to order his reinstatement to the Maryland bar so he can then seek to be reinstated to the federal bar, this remedy would be barred by the *Rooker-Feldman* doctrine, which prohibits this Court from "exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006); *see also Czura v. Supreme Ct. of S.C.*, 813 F.2d 644, 646 (4th Cir. 1987) (holding that an "attack[ on] the decision of the South Carolina Supreme Court permanently disbarring [a plaintiff] from the practice of law" was "properly dismissed under [*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 (1983)]").

2.    ADA Claims

Patterson asserts that Eleventh Amendment immunity does not apply to "Counts 35 and 36"[12] because he raises claims under the Americans with Disabilities Act ("ADA"). ECF 51-1, at 11. "Title II of the ADA properly abrogates sovereign immunity as provided by the Eleventh Amendment of the United States Constitution." *Dee v. Maryland Nat. Capitol Park & Plan. Comm'n*, Civ. No. CBD-09-491, 2010 WL 3245332, at *4 (D. Md. Aug. 16, 2010) (citing *United States v. Georgia*, 546 U.S. 151, 158–59 (2006)). "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Georgia*, 546 U.S. at 159 (emphasis in original); *see also Burnett v. Maryland Dep't of Lab.*, Civ. No. MJM-24-3718, 2025 WL 2720147, at *8 (D. Md. Sept. 24, 2025) ("[A] state government's Eleventh Amendment immunity from suit in federal court is abrogated under Title II of the ADA insofar as the conduct alleged to violate. Title II '*actually* violates the Fourteenth Amendment' of the U.S. Constitution.") (quoting *Fauconier v. Clarke*, 966 F.3d 265, 280 (4th Cir. 2020)). To determine whether Eleventh Amendment immunity applies, courts must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. As such, "[t]he first step of the *Georgia* inquiry requires the district court to assess whether Defendants' alleged conduct 'forms the basis for a Title II claim.'" *Holly Hill Nursing LLC v. Padilla*, Civ.

---

[12] The Court notes that Counts labeled thirty-three and thirty-four of the amended complaint mention the ADA. ECF 27, at 75–77 ¶¶ 246–259. Patterson indicates the claims were "misnumbered." ECF 55-1, at 5.

No. PWG-17-3554, 2018 WL 5013826, at *8 (D. Md. Oct. 16, 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007)).

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II, Patterson must show that "(1) [he] ha[s] a disability; (2) [he is] otherwise qualified to receive the benefits of a public service, program, or activity; and (3) [he was] denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016). "A failure to make reasonable accommodations may constitute discrimination under Title II." *Holly Hill Nursing*, 2018 WL 5013826, at *8 (citing *Lamone*, 813 F.3d at 503 n.5).

Patterson's purported ADA claims falter at the first step of the *Georgia* inquiry as he fails to allege any violation of Title II. Although Patterson alleges he has a disability, *see* ECF 27, at 24 ¶ 75 ("Plaintiff has a diagnosis of Multiple Sclerosis"), he does not allege that any of the defendants engaged in discriminatory conduct on the basis of his disability. Instead, he merely mentions the ADA in two counts related to Lawless' request for his medical records. *See, e.g.*, ECF 27, at 76 ¶ 252 ("This thinking violated the reasonable accommodations rationale" of the ADA), at 77 ¶ 258 ("Defendants' efforts to obtain Plaintiff's medical records, in spite of [t]he ADA . . . affected the Liberty Interest of Plaintiff to pursue the private practice of law"). Patterson also states that "[t]he ADA calls for 'reasonable accommodations' to be provided in cases of disclosed disabilities," but he does not allege that he requested or was denied any accommodations in violation of the ADA. *Id.* at 25 ¶ 76. Patterson does not otherwise allege any discrimination on

11

the basis of his disability, nor does he allege that either of his reinstatement petitions were denied because of his disability.[13]   Accordingly, Patterson fails to overcome Eleventh Amendment immunity because he does not sufficiently plead a claim under the ADA.[14]   *Cf. Holly Hill Nursing*, 2018 WL 5013826, at *7–9 (finding that plaintiff's disability discrimination claims were not sufficiently pled to overcome Eleventh Amendment immunity where plaintiffs "assert[ed] broadly that state officials discriminated"); *Burnett*, 2025 WL 2720147, at *8 (Eleventh Amendment immunity applied where the plaintiff "allege[d] no facts to suggest any discriminatory conduct by Defendant or conduct by Defendant that violated the Fourteenth Amendment.").

### 3.    Individual Capacity Claims

Patterson asserts that his claims survive the Eleventh Amendment because he has also sued Defendants "in their personal . . . capacities." ECF 51-1, at 8. Defendants argue that Patterson's "mere incantation of the term 'individual capacity'" fails to "transform an official capacity action into an individual capacity action," specifically because Patterson "has made no allegations wherein [Defendants'] actions can be conceived as performed in their individual capacity." ECF 47, at 13–14 (quoting *Adams v. Ferguson*, 884 F.3d 219, 225 (4th Cir. 2018)).

"When defendants are sued in their individual capacities, . . . they are not immune to suit under the Eleventh Amendment." *Mitchell*, 2018 WL 4468855, at *3 (citing *Hafer v. Melo*, 502 U.S. 21, 22 (1991)). "If a complaint specifically alleges a capacity in which the defendant is being.

---

[13] Such threadbare allegations would also be subject to dismissal under Rule 12(b)(6), as Patterson fails to plead sufficient "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[14] Patterson likewise fails to allege any violation of the Fourteenth Amendment, since "the right to pursue one's chosen profession or common calling is not a fundamental right guaranteed by the Fourteenth Amendment." *Oliver v. Virginia Bd. of Bar Examiners*, 312 F. Supp. 3d 515, 529 (E.D. Va. 2018). But the Court need not reach this issue as the *Georgia* inquiry ends at the first step because Patterson fails to state a claim under the ADA.

sued, that designation controls." *Harvey v. Cline*, No. CV 15-14091, 2016 WL 1562950, at *4 (S.D.W. Va. Apr. 18, 2016) (citing *Amos v. Md. Dept. of Pub. Safety & Corr. Svcs.*, 126 F.3d 589, 608 (4th Cir. 1997)). However, in a personal capacity suit, "individual liability must be based on personal conduct." *Robinson v. Bd. of Educ. of Washington Cnty.*, Civ. No. ELH-22-1102, 2023 WL 6643373, at *8 (D. Md. Oct. 12, 2023) (citing *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). Here, the amended complaint lacks allegations of individual action by any of the named defendants other than Lawless, Grossman, and Hein. With respect to the Commission member defendants, Patterson broadly refers to them as "Defendants 2012 Grievance Commissioners," "Defendants 2021 Grievance Commissioners," or just "Defendants" in asserting his claims. *See*, *e.g.*, ECF 27, at 11, 23. Patterson otherwise fails to allege any conduct by any of the members of the Commission and thus does not plead "sufficient facts to allow the court to infer liability as to *each* defendant." *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 676 (emphasis in original)); *see also Heym v. APG Hous., LLC*, Civ. No. JRR-23-2092, 2024 WL 2302306, at *3 (D. Md. May 21, 2024) ("A pleading cannot simply 'lump[ ] [Defendants] together in the complaint without sufficient detail,' or further without 'alleging any facts specific to each entity.'") (quoting *Wormack v. Caesars Baltimore Mgmt. Co., LLC*, Civ. No. SAG-22-01108, 2022 WL 2668183, at *5 (D. Md. July 11, 2022)). As Patterson has failed to state a claim against them, individual capacity suits against the eighteen current and former members of the Attorney Grievance Commission may not lie. *See Love v. Hogan*, No. 22-1928, 2025 WL 763473, at *2 (4th Cir. Mar. 11, 2025) (finding the district court properly dismissed personal capacity claims where the plaintiff "did not plead specific, individualized allegations against any Defendant" and "[i]nstead[ ] used 'Defendants' throughout his complaint").

Eleventh Amendment immunity, however, does not apply to the individual capacity claims against Lawless, Grossman, and Hein because Patterson specifies that they are sued in their personal capacities *and* has made definitive allegations against them. For example, Patterson pleads that "Lawless personally handled the investigation and pleadings which caused the unconstitutional denial of the 2021 Reinstatement Petition," Grossman "personally oversaw the processing and decisions which resulted in the unconstitutional denial of the 2012 Reinstatement Petition," and "Hein was the Assistant Bar Counsel assigned to the 2012 Reinstatement Petition," ECF 27, at 8–9 ¶¶ 4–6; *see also e.g., id.* at 14 ¶ 28 ("Grossman and Hein caused [the Supreme Court of Maryland] to believe that the character reference was signed."), at 55–56 ¶ 200 ("Lawless accused Plaintiff of 'willfully' not paying his taxes and purposely filing his taxes late during the years between 2011 and 2021."). As such, Lawless, Grossman, and Hein do not enjoy Eleventh Amendment immunity with respect to Patterson's personal capacity claims against them.

### B.    Prosecutorial Immunity

Nevertheless, as Defendants contend, Lawless, Grossman, and Hein are entitled to prosecutorial immunity. "[A]bsolute immunity protects a 'prosecutor when serving as an advocate in judicial proceedings,' including for 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]'" *Mathis v. McDonough*, Civ. No. ELH-13-2597, 2014 WL 3894133, at *11 (D. Md. Aug. 7, 2014) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997)). A prosecutor's absolute immunity when performing advocative functions is designed to protect the judicial process. *See Imbler v. Pachtman,* 424 U.S. 409, 427–28 (1976) (providing that qualifying a prosecutor's immunity would "prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system"); *Kalina,* 522 U.S. at 125–26. Thus, the relevant inquiry to determine whether a prosecutor's actions are protected.

by absolute immunity is whether the actions at issue are closely associated with judicial process. *See Burns v. Reed*, 500 U.S. 478, 494 (1991) (citing *Imbler*, 424 U.S. at 430). Courts must use a "functional approach" to "determine whether a particular act is 'intimately associated with the judicial phase.'" *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018) (quoting *Imbler*, 424 U.S. at 430). In applying this functional approach, courts in the Fourth Circuit consider only "'the nature of the function performed,' without regard to 'the identity of the actor who performed it,' 'the harm that the conduct may have caused,' or even 'the question whether it was lawful.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 271 (1993)).

"[T]he Fourth Circuit and district courts within this Circuit have extended absolute immunity outside the context of traditional criminal prosecutions." *Mathis*, 2014 WL 3894133, at *13 (first citing *Pak v. Ridgell*, Civ. No. RDB-10-01421, 2011 WL 3320197, at *7 (D. Md. Aug. 1, 2011) (concluding that "bar counsel prosecutors are afforded absolute immunity for conduct performed in a judicial capacity"); then citing *Hunter v. Virginia State Bar*, 786 F. Supp. 2d 1107, 1112 (E.D. Va. 2011) (extending prosecutorial immunity to an assistant bar counsel); and then citing *Ostrzenski v. Seigel*, 177 F.3d 245, 250 (4th Cir. 1999)). "Courts that have considered the issue have extended prosecutorial immunity to prosecutorial disciplinary counsel or bar counsel, as well." *Whitner v. Coggiola*, No. CA 3:12-1876-CMC-JDA, 2012 WL 4051121, at *4 (D.S.C. Aug. 21, 2012) (collecting cases), *report and recommendation adopted*, No. CA 3:12-1876-CMC-JDA, 2012 WL 4051185 (D.S.C. Sept. 13, 2012), *aff'd*, 508 F. App'x 195 (4th Cir. 2013); *Pak*, 2011 WL 3320197, at *6.

Judge Bennett's decision in *Pak v. Ridgell* squarely addresses prosecutorial immunity for Bar Counsel, *see* Civ. No. RDB-10-01421, 2011 WL 3320197 (D. Md. Aug. 1, 2011), *aff'd sub nom. Hekyong Pak v. Ridgell*, 476 F. App'x 750 (4th Cir. 2012), and the Court finds it instructive

here. In *Pak*, the Court found that "[i]n light of the persuasive authority in other Circuits, analogous cases in the Fourth Circuit, and the Supreme Court's jurisprudence regarding prosecutorial immunity . . . bar counsel prosecutors are afforded absolute immunity for conduct performed in a judicial capacity." *Pak*, 2011 WL 3320197, at *7. Accordingly, the defendant, Assistant Bar Counsel, enjoyed prosecutorial immunity for appearing not only in front of the Supreme Court of Maryland with respect to the plaintiff attorney's disbarment, but also before an informal Peer Review Panel on the same issue. *Id.* While it was clear to the Court that Assistant Bar Counsel had immunity while "acting in an official capacity in a courtroom proceeding," it reasoned that immunity also applied in the informal peer review context because the Peer Review Panel occurred after investigation, and "bar counsel clearly acts as an advocate in front of the Peer Review Panel . . . intend[ing] to persuade the Panel to recommend further disciplinary action." *Id.* at *8. Moreover, Judge Bennett noted that "affording bar counsel absolute immunity for conduct in judicial proceedings serves an important interest" of "'protect[ing] the public by determining a lawyer's fitness to practice law.'" *Id.* (quoting *Attorney Grievance Comm'n of Maryland v. Collins*, 457 A.2d 1134, 1142 (Md. 1983)).

Here, Defendants assert that prosecutorial immunity applies because the "actions alleged in the amended complaint occurred during the investigatory and reinstatement proceedings and . . . were intimately 'associated with the judicial process.'" ECF 47, at 18. The Court agrees, at least with respect to Bar Counsel. First, Patterson's claims regarding his 2012 petition arise out of Bar Counsel's various objections to his reinstatement, all of which were argued in a hearing in front of the Supreme Court of Maryland. *See* ECF 27, at 21 ¶ 59 (alleging that "arguments were heard in court" on the 2012 reinstatement petition). Also, as in *Pak*, Bar Counsel's appearance in court plainly qualifies as "conduct performed in a judicial capacity," as Bar Counsel were "acting in an

official capacity in a courtroom proceeding." *See Pak*, 2011 WL 3320197, at *7 (finding it "clear that [Assistant Bar Counsel] has immunity for her conduct in both the evidentiary hearing in the Circuit Court for Baltimore County and in the Court of Appeals of Maryland" because she was "acting in an official capacity in a courtroom proceeding"). As such, Bar Counsel enjoys prosecutorial immunity for the alleged acts relating to the 2012 reinstatement petition.

Patterson asserts that prosecutorial immunity does not apply to Bar Counsel's conduct related to the 2021 reinstatement petition because Lawless did not appear in front of the Supreme Court of Maryland, and thus, Bar Counsel "only acted as investigators in this case." ECF 51-1, at 14. This argument is unavailing. Patterson cites no case law for the proposition that prosecutorial immunity attaches only when there is a court proceeding. Indeed, the general rule is that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley*, 509 U.S. at 273 (emphasis added); *cf. Hunter*, 786 F. Supp. 2d at 1112 (finding that Virginia assistant bar counsel enjoyed prosecutorial immunity where she had only initiated disciplinary proceedings against an attorney, before a hearing was held). Here, the allegations reflect Bar Counsel's allegedly unlawful acts in 2021 were all undertaken in the course of their role as advocates and were related to the preparation for and presentment of objections to the Supreme Court of Maryland regarding Patterson's petition for reinstatement. *See e.g.*, ECF 27, at 55 ¶ 198 (alleging that Bar Counsel required Patterson to supply his medical records and objected to his reinstatement on the ground that he refused to disclose his records); at ¶ 199 ("Lawless required [Patterson] to answer 16 questions as part of their investigation of [t]he 2021 [r]einstatement [p]etition); at 56 ¶ 200 ("Lawless accused [Patterson] of 'willfully' not paying his taxes . . . in the formal objections" presented to the Supreme Court). As in in *Pak*, Bar Counsel

"clearly act[ed] as an advocate" in presenting their objections to the Supreme Court of Maryland, "intend[ing] to persuade" the Court to deny Patterson's petition. *Pak*, 2011 WL 3320197, at *8. Assuming all of Patterson's allegations to be true, the Court nonetheless finds that Lawless, Grossman, and Hein, in their roles as Bar Counsel, are protected by prosecutorial immunity for actions taken with respect to Patterson's petitions. As such, all individual capacity claims against them are dismissed. The Court need not reach Defendants' remaining arguments.[15]

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF 43, is GRANTED.

A separate implementing order will issue.

Dated: February 3, 2026

/s/
Brendan A. Hurson
United States District Judge

---

[15] The Court notes that all of Patterson's claims arising from his 2012 petition for reinstatement are also subject to dismissal because they are time barred. "The statute of limitations for § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Deramus v. Montgomery Cnty. Domestic Rels. Section*, Civ. No. GJH-18-2337, 2019 WL 2395311, at *2 (D. Md. June 5, 2019) (quoting *Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66–67 (4th Cir. 2015)). "In Maryland, the applicable statute of limitations is three years from the date of the occurrence giving rise to the cause of action." *Id.* (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-101). Generally, a "statute of limitations begins to run 'when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.'" *Id.* (quoting *Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)). Here, Patterson had sufficient knowledge of the alleged facts forming the basis for his claims related to his 2012 reinstatement petition at the moment his petition was denied, which was twelve years before he filed his complaint. *See* ECF 43-2, at 2.

18